This case is People v. Yellow Case 580 Kelly states the appearance today on behalf of the people. In this forfeiture case, the people allege the claimant used the 2002 case backhoe to commit the offense of possession of a stolen or converted vehicle. The state alleged the backhoe was used in the movement of and the attempted and actual destruction and scrapping of a stolen semi-trailer. At the close of the evidence, the trial court found the people offered compelling evidence that the defendant was engaged in the unlawful possession and destruction of a stolen trailer. Despite this, the court ruled that the evidence failed to establish the case 580 backhoe was used in the commission of processing and scrapping of the stolen trailer in question. Certainly, compelling evidence meets or exceeds the preponderance of the evidence standard of more likely true than not. The claimant admitted he chopped up Andy McGuire's 1988 trailer just a couple of days before he was arrested for the underlying offense. The claimant offered several stories about how he acquired that trailer. None of those stories turned out to be true. The claimant had no title to Andy McGuire's trailer and by law this establishes that the claimant exercised exclusive unexplained possession of Andy McGuire's trailer. The legislature has determined that ownership is established by things such as title, bills of sale, or other documents establishing that someone owns something. The lack of a title incurred by law and when the claimant chopped up the trailer, he knew it was stolen. It seems clear that the trial court applied the right inference from the vehicle code that exclusive unexplained possession of the vehicle establishes knowledge that the trailer was stolen. Is there a criminal case right now? There is. When? When would it have the trial? I don't have the information on when that trial might be. I've been in contact with the assistant state's attorney for the forfeiture case but Mr. Stormont may have more information. It's been there for a year right now probably? Yeah, a year. You're just sitting there for nothing? Yeah. Okay. I'm not certain what has held up whether it's something on behalf of the state or of the defendant. I don't have that information but the problem in this case is that the court allowed the fact that the claimant removed the identifying VIN numbers and any markers on the trailer to be used as a shield to protect him from any inferences on this case. It allowed him to shield the backhoe from forfeiture. To be clear, all that is necessary to establish forfeiture is that the backhoe was used in the commission of the crime. I would invite the court to look at the pictures offered and admit it into evidence. People's Exhibit 1 shows the SDX and I apologize I just have a black and white copy of the actual color photos in the file but it clearly shows SDX, clearly shows the unit number 4881. I mean there's no doubt this is Andy McGuire's trailer. People's Exhibit 2 shows a little bit closer detail of Andy McGuire's trailer, the SDX, the type of trailer. People's Exhibit 3 shows an even closer picture. People's Exhibit 4 shows the backhoe in question and then Claimant's Exhibit 5 shows kind of a panoramic view of what goes on at this operation run by the claimant. It shows sets of axles that have been dismantled. It shows the backhoe with the chain on the front of it and that's really the source of this error. Twenty-seven briefs she had said the remedy in this case should be stayed in the purchaser until the criminal case has been resolved. That's correct. If you do that then we do this case after the criminal case? I believe that. Why not? The proper... Why don't we do that? Why did the court not do it? Why don't you guys do it right now? Well what happened was the claimant asserted fifth amendment privilege. It's a civil case so the state is entitled to issue discovery. The state did issue that request to admit the fact and requested discovery. The trial court, Judge McGlynn said well I'm going to allow him to claim his fifth amendment privilege and say that you're not entitled to any discovery on the case. But contrary to that position the claimant also said well not only are we asking the state not getting any discovery but let's go to trial right now. Let's not have a stay here. When the state moved to state of proceedings until the criminal case was over that would have cured any fifth amendment problems that had arisen. In the case that the claimant cited as additional authority, the state having objection, the state agrees with that case which says in the right circumstances a stay is the appropriate remedy. I believe that would have solved a lot of the issues on this case but instead the state was unfairly handcuffed at almost every stage of this entire proceeding. On 27 page it says that. Yes. I agree that a stay would have been the appropriate remedy here. It would have shielded the claimant from having to come in and admit anything. Although he did make admissions to Officer Suttles that he did chop up that vehicle. He admitted that all of the trailer parts lying around on his property he didn't have a title to any of those. So essentially what we have here is an illegal chop shop operation where the claimant is allowed to remove VIN numbers, remove identifying parts from vehicles and then convincing the trial court to say okay well the state has to now prove that the piece that's chained on the backhoe on the day it's seized is a piece that the owner of that vehicle can readily and specifically and conclusively identify as his. Now other than an eyewitness seeing the complete destruction and dismantling of their vehicle or manufacturers putting vehicle identification numbers on virtually every component of the vehicle this is simply standard that can never be met in any case. This is not a criminal case where it is beyond a reasonable doubt. It is preponderance of the state established through all the links in the chain, circumstantial evidence that backhoes were used by the claimant to possess stolen vehicles, to dismantle stolen vehicles, to move parts of stolen vehicles to trucks, to haul them off to scrap processing centers to get paid for those were legitimately owned by the claimant and people's exhibit one shows very large flattened doors from a large trailer truck. I doubt that claimant's employees stood on that and jumped on it and caused all of the damage and caused all of that flattening to occur. Something had to do that. The state offered most sophore anti-events of a different backhoe being used by a claimant's business partner to completely dismantle a large 2002 Kenworth semi-trailer. I know your honors are well acquainted with how large that truck was. It would have been a tractor, wouldn't it? The tractor, not the trailer. I'm confused on tractor and trailer because the trailer doesn't have an engine. I thought there was an engine involved with some backhoe. There was an engine involved with removing the video that was submitted by the state shows a large truck in a cleared out area of the woods where state police were tipped off that some illegal chop shopping was going on there. They set up a surveillance video and caught all of this stuff going on. If you watch the video, it shows the complete destruction of that semi-trailer. The trailer or the truck? The entire truck. A truck and a trailer. Tractor and a trailer. The tractor, they said Kenworth in the brief. But the trailer, I don't think Kenworth makes trailers, do they? Well, it's a semi-truck with the trailer bed on the back of it. So it's an addition to not just the truck, but a trailer on the back. But I think the part that the evidence showed, the part that was the most valuable was the engine. So that's the part that they would pay the extra $150 to remove that. But that backhoe in and of itself is not evidence of the backhoe here. That's a different backhoe. It's a different backhoe. That backhoe got traded in. But the state didn't offer that evidence to show, well, this was the backhoe that was used. It's modus operandi evidence, which is a unique earmark of how these individuals commit these things. It's a use of a backhoe. I grew up in southern Illinois. I'm from southern Illinois. I know backhoes are used to move earth. Just down the road, I saw a backhoe being used, the claw part of it, to pull up parts of sidewalk. So they can demolish things, but generally they're used for earth removing equipment. Now, when you attach a chain on the front of it, you can do a lot more damage. And you can move large, unwieldy pieces of metal that would otherwise fall off, and you can get them moved into a truck, send them off to a scrapyard, and make your money that way. But I think elevating this case to have to establish eyewitness testimony about that part unfairly prejudices the state. It raises the burden. No one would be able to identify the components of their own automobile that they may be very intimately familiar with. If the bottom of a chassis was cut out, I don't know if anybody could identify that. But you'll see two sets of axles on Claimant's Exhibit 5, and Andy McGuire, the owner of the SDS truck, identified two of those axles. The other ones he said weren't his. So I think the trial court somehow was convinced that the standard was having to establish eyewitness testimony. That isn't even the standard at a criminal trial where the evidence is required to be beyond a reasonable doubt. The evidence is very compelling. I agree with Judge McGlynn on that part, that this was an illegal chop shop operation, and that this trailer was stolen. But I believe the evidence also shows that the state met its burden of proof on this case, that this backhoe was used in the commission of the underlying crime. It made the possession of the stolen trailer easier. And that's what all of the case law says is the standard. Because the court required the state to prove forfeiture in well in excess of preponderance of the evidence, we believe that this ruling is erroneous as a matter of law. I agree with Mr. Stormant that findings of fact are entitled to deference, but their findings of fact are not at issue here. What's at issue here is the legal conclusion made by the trial court that's an incorrect and improper legal conclusion that the state failed to meet its burden of proof. What should have happened here is when the state rested its case, the claimant should have been required to present an innocent owner defense. So if this case goes back, what the people suggest is that the trial court be directed to either bring the case back up and have the burden shift to claimant as it's supposed to under the forfeiture law, or him to establish an innocent owner defense, which under these facts I think would be a near impossibility, or an outright reversal of the forfeiture case. In any event, the people ask you reverse and remand for the proceedings in the trial court. Thank you. Sorry, Your Honor, did you have another comment? Thank you. Thank you, may it please the court, I'm Paul Starman, and I'm arguing for the 580CK. Now, let's put this thing in perspective that Judge McGlynn put it in. There are two cases here, not one. There's a criminal case where the defendant deserves his rights under the Fifth Amendment to remain silent, doesn't have to testify. And there is a civil case here where the burden of proof is different, preponderance of evidence, we agree, and it involves a piece of equipment, a 580C backhoe. There are two cases here. Now, these two cases have been brought by the state. They've been brought by the state. And neither one of these cases, I mean the criminal case has never been brought to trial because I doubt that they'll ever be brought to trial. They keep continuing it and continuing it. And the very reason that it's continued is they don't have any evidence. So the state has a contempt, or the case did not want to have the case? Well, I mean, we go out there and we have conferences, settlement conferences, and nobody pushes this case to trial. Why would the defendant push it to trial? I mean, the state doesn't push it to trial. Let me tell you why I believe the state doesn't push it to trial. When you see false affidavits of the M-E-A-T-T-A-F people, this fellow by the name of Edward Settles who testified in this case, when you see these false affidavits, here's what he said. Now, let's talk about the criminal case within this civil case. Now, the civil case, they seized the backhoe on May the 29th, 2012. Now, they seized it. They went in there and they seized it based upon this affidavit. Edward Settles was the exile officer, the METI officer. I'm sorry, I'm messing that up. And he says in his affidavit that the case super backhoe, doesn't name what it is, serial number, pin number, was being used in the commission of a felony. The backhoe was being used to move, tear apart a stolen semi-trailer. He sent that on the road, 5-21-12. Well, then I questioned him about that and here's his answers. On page 7 of my brief, first of all, he says that there were two backhoes there. And then later we found out that one was a steer skidder, which is a little small bobcat of the same color. There was also lots of torches there and things, and I mean not torches, but whatever, cutting tools. Now, and the only thing that was found that could have been considered to be stolen was a little door. Had a name on it. It had a name on it, SDX, and it had a number on it, 1441. Now, when I asked the settles, I said, was there anything else that you could determine was stolen? He said, no, no, there's nothing else stolen out there. His questions were carefully asked, but nothing was identified as stolen. As a matter of fact, the backhoe that he took had a chain on the bucket and had a beam on it, but that was not identified as any stolen good or any stolen part on any trailer to include Andy McGuire's trailer. So, all we really have here, we could even call a part of a stolen piece of property is this small door, which is probably worth nothing. If my client was convicted of this, probably a misdemeanor, probably less than $300, $400, you know, if they're going to try and prove this up. But anyway, when Officer Settles was asked about this on page 66, did you look at the backhoe close, the one we're defending here, the ceremony of the backhoe? I did, he said. This is record 6666. I'm going to show you which part of this People's Exhibit 66 record. I can't say for sure that that's one of the photographs I took because Director Brewer also took photographs, so he didn't know for sure if that backhoe was the photograph that he took. Officer Settles testified he took the pictures of the backhoe that he witnessed on site of the location when he was previously alluded to. And then Officer Settles also testified on direct examination that there's been other backhoes at the site and they never witnessed a piece of equipment doing anything on this site. On cross-examination, Officer Settles said that he had arrived at the scene, he believed there were two case backhoes there. On further examination, he was next. Now, are you able to determine whether the piece of frame was stolen? That's the one hooked to the backhoe he's talking about. I was not. So the backhoe was there with what you're saying is a piece of frame in the bucket. Answer, it was attached by a chain. Question, attached by a chain, but you say that the piece of frame was not stolen. I cannot. So you can't say you cannot see, you cannot personally see that the backhoe was involved in any illegal activity, can you? No. At the time you arrived? No. The backhoe was sitting still. You arrived there, you were there during the scene based upon the call. Did you see the backhoe involved in any illegal activity? No. When asked when the backhoe was removed from the site, the officers themselves, one of the MEGTA guys on page 7 of my brief, asked Bailey, one of the guys who was in the scrapping team, to get on that backhoe and move over a wheel case. I mean, a fifth wheel, all that stuff. And they couldn't find anything. They couldn't find anything was stolen. They couldn't find any record of anything stolen. And the only thing that Andy McGuire was able to identify was that door, and it had nothing to do with either backhoe or the skidder. Now, Officer Settles was asked again on the record, page 88, it appears to be a bunch of scrap, wood scraps from trailers. Anything identifiable there as stolen? No. Okay. Nothing that was identifiable. All right. So he never identified anything that was stolen, except that door. Now, and he was asked again by me. Now, you've signed an affidavit. This is page 8 of my brief. I reasonably believe that the property is subject to Department of State of Illinois based on one or more of the following facts. A Super M backhoe was being used in the commission of felony. The backhoe was being used to move, tear apart, stolen semi-trailer. Now, this is the affidavit you signed, wasn't it, Officer Settles? Yes. And the affidavit is wholly untrue. Isn't it, Officer Settles, when asked under oath? Question. Now, Officer, you never saw the CK cutting any stolen trailers, did you? Answer, no. You didn't see this backhoe picking up any portion of stolen trailers? Answer, no. So, I mean, that's the reason this case doesn't go to trial on a criminal case. That's the reason why Judge McGlynn ordered what he ordered, the fact that they've never been able to connect this thing up, and they've never been able to connect this backhoe up with any illegal activity. And then they went as far as saying, well, we're going to try and get Judge McGlynn to bite on this modus operandi evidence. In other words, you know full well what modus operandi evidence. That is, evidence of a common scheme by the same persons. Well, there's no modus operandi evidence here. Fletcher Murray was the fellow that was out. They set a camera up. It had nothing to do with this. It has nothing to do with this case at all. Later on, however, the META team set up a little camera somewhere else at some other time and found some guys that were strapping on a truck and took the engine out with a different backhoe, different people. My guy wasn't at all involved in that. Not at all. But they say, oh, he was a partner. Fletcher Murray's a partner, my guy, because at some time five, six years before, they brought a backhoe together, which was traded in on my backhoe, and so on that stuff. No, no, not even close to any modus operandi evidence. Cordial is full well what modus operandi evidence is. Now, all I'm asking for is that, you know, us lawyers get sick and tired of having good clients, and they come out and seize their stuff. It's not as bad as the feds do. I mean, the feds seize your stuff, and you've got to pay a bond, and you've got to get it back. But here, they seized this backhoe on a phony false affidavit. Doesn't that make you angry? It makes me really angry. They just seized it on a false affidavit that wasn't true. And then they talk about their saving grace as the people versus atoms. People versus atoms, saving grace. Well, this case is a more liberal or broad interpretation of the statute, but it involves a guy who robbed a filling station with a car, and they took the car. Well, of course the car was involved in the crime. He was in it. He robbed a filling station with it. How can this be in any way connected with the situation in our situation? I mean, it just can't be. I mean, these guys go out there. Why didn't they take the skidder? The other thing that they thought was, why didn't they take the generators? Why didn't they take the settling torches? Why didn't they just choose this backhoe? Well, I'll tell you why. Because this backhoe was worth $42,000. That's why. And the second thing is, if they're going to file a civil case against my guy and take his backhoe, then why can't he call this up for her as soon as possible? If anybody has a piece of equipment that's that valuable, and he's using it in his business, why should he wait until the state decides they're going to set the criminal case for trial and wait until that time to get his doggone backhoe back? He's paying interest on this thing. $42,000 is a lot of money. These backhoes are worth a lot of money. Why should they just sit there? Why should they just sit there and let the state go? They filed it. They filed it. Let me get to one other point. Now, they also complained in his brief about the issues of discovery. Now, the cases are clear under the Fifth Amendment, and I cited one early 1997 case, that nobody who is charged with a crime has to give up his disability to testify or give information. Nobody has to do that. The cases are clear. I even posed a brand new case to you from the Seventh Circuit, Judge Posner, recently, very recently, in the last April, I think, says the same thing. Now, the reason why this is ludicrous, is because here's the discovery that I got in the criminal case. Look at all this discovery. Everything that the state knew about, everything the state knew about this case is in this discovery. The criminal discovery. And it was given to Ben Hennig, when he tried this case. All the information I got out was pictures, statements, everything came out of this criminal discovery. Now, they also, my guy admitted that he owned the equipment. He admitted that. In his answers to interrogatories, he declined to answer 1 and 16, because of the protective order the judge gave him. They were asking him all sorts of questions, questions to taking handcuffs into the St. Clair County Jail. And he did answer the questions that were not incriminating, as to where he, who were your witnesses. He answered the 213 F stop. But he didn't answer, but he had a protective order. They also asked that he admit things under Rule 216. How can a defendant in a criminal case admit things? And the genuineness of documents, the judge excused him from that. So, what the argument of the, the argument that I heard here, is an argument why this should be an in-person conviction. Not in rent. The argument I heard here today is a reason why Horatio Summerall should be found guilty of a chop shop, an awful possession of stolen vehicles. That's what they argue. This is what their argument is. If you read through it, that's an argument. They never, the case tractor involved here at Serial Number is not involved in this case. It's not involved. There's no nexus, no connection, and no reason that the state should have kept this tractor. No reason. And Judge McGlynn felt that there could have been a possibility, but in-person theft here, but no connection with the case tractor. Thank you very much, gentlemen. Do you have any questions? Thank you. Thanks, counsel. Your honors, I agree. The state agrees this is an interim proceeding. This is not a proceeding against Mr. Summerall. It is against the 2002 case back code that claimant's own employee, Tony Watson, admitted was used to move and dismantle large pieces of semi-trailer truck parts to move them into another truck, to haul them to a different location, and to get money for scrap for them. For the claimant to come in here and argue that he has somehow been deprived of something when he's using this backhoe to completely deprive owners of their rightful possession of expensive property, including this SBX truck, in my opinion, is completely disingenuous. Who has a motion to continue the criminal case? Your honor, I think part of the problem is the criminal case is not a part of this appeal. I know that. The criminal case is not a part of the appeal. I know that. But that would, well, does they have a motion to continue by the state? I just simply don't have that information. And even if I did, your honor, I do not believe it's appropriate to bring it into this case because it's not a part of the record on appeal. If it's not a part of the record on appeal, then there should have been a motion or leave to supplement the record with all of this, the criminal case. Was the alleged owner of the backhoe ever granted, offered immunity to testify to waive the Fifth Amendment? I do not believe. I haven't read the record, so I don't know. I don't believe that was ever brought up. But I think what Mr., what counsel Storman is doing is confusing two issues. The state never said, this claimant, defendant, whatever you want to call him. In this case, he's a claimant. The state never said, you should not be allowed to take the Fifth Amendment. What the state said was, if you're allowed to take the Fifth Amendment, you should not be requiring the state to go forward on this forfeiture case. Why should you get the benefit of both? The appropriate thing was to stay this proceeding so that the state would have been entitled to a civil discovery because this forfeiture case is a civil case. It's not a criminal case. All of that is a red herring. It has nothing to do with the civil case, other than the fact that the court found in- Backhoe amenity in this case would just stay the civil case now. That's right. That's what the state argued. The state never argued you should not be allowed to take the Fifth. You're allowed to take the Fifth, even in a civil case. There's no dispute on that. The state never argued that, and I'm not arguing that here today. What I am arguing here today is all of these things about an affidavit, about whether this affidavit established anything, that's all a red herring. The state brought in proof. The modus operandi evidence is relevant. Why is modus operandi evidence relevant? Because it is a unique earmark of how you use these backhoes to deprive rightful owners of their property, completely demolish it where they can never get it back. He's had enjoyment and use of that backhoe all this time, and if it's true that he'd had more than one backhoe at that part, at that lot, then I think the whole argument that he made, that, well, you've got to do this case right now, your honor, because I'm not able to do my business, is completely disingenuous. If he had another backhoe there, there's no reason this one couldn't have been taken by the state. It's this backhoe that had the chain on it that had a large trailer cart, not a piece of lumber, on it when it was seized. To come in here and argue the state could not establish that that particular piece was from that trailer because he removed the VIN numbers is completely ludicrous, in my opinion, too. The evidence established backhoes were used in the commission of possession of stolen or converted vehicles. That's what the state had to establish. That's what the state did establish. I invite the court again to look at the photographs in this case. This is not a building where there are walls. It's an open-air operation. The only piece of equipment on this lot that could be used to dismantle that property is a backhoe and a chain. That's what this evidence shows. That's what this case is about. The claimant had no titles to any of the items that were chopped up on that property. How he can come in here now and claim they were rightfully his is beyond me. Thank you. Thank you, Your Honor. Thanks, counsel. Chairman, I'll leave you guys at the end. We'll take about five minutes.